El Pueblo de Puerto Rico, demandante y apelado, *v.* Isidro Prieto Vélez, acusado y apelante.

Número: CR-63-36        Resuelto: 2 de febrero de 1966

*Edna Abruña Rodríguez,* abogada del apelante; *J. B. Fernández Badillo, Procurador General,* y *Adaljisa Díaz de Collazo, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El apelante fue convicto por un jurado del delito de asesinato en primer grado, perpetrado al cometerse un escalamiento y sentenciado a la pena de reclusión perpetua. Además el tribunal de derecho le declaró culpable de portar armas prohibidas y le sentenció a cumplir seis meses de cárcel.

En los dos primeros señalamientos el apelante sostiene en este recurso que el Tribunal a quo erró (1) al no instruir al jurado que la única testigo de cargo que incriminaba al acusado era un cómplice; (2) al omitir las instrucciones sobre la necesidad de corroboración del cómplice; y (3) al no ordenar un veredicto directo de absolución por insuficiencia de la prueba.

Estos errores no fueron cometidos. Veamos.

Para el día 2 de septiembre de 1961 hacía un mes que el acusado apelante vivía en concubinato con Epifania Padilla Náter en el pueblo de Cataño. Como a las siete de la noche de ese sábado 2 de septiembre, el apelante llegó a su casa en estado de embriaguez. Venía de Buchanan donde trabajaba. Llegó peleando con Epifania a quien tenía encerrada con candado en la casa donde vivían. Declaró Epifania: "El me cayó encima y yo me tiré y me fuí huyendo." Se fue a caminar por las calles de Cataño y entró a algunos bares a tomar cerveza. Cuando salía del Bar "Casino" se encontró con el acusado y éste le pidió dinero. Al contestarle que no tenía, la amenazó con una cuchilla curva poniéndosela en el cuello y le dijo: "Sigue por ahí porque si encuentro hombre o mujer lo esgar-

gantaba", "porque voy para un sitio que estoy seguro que voy a conseguir dinero". El acusado le dijo además que el dinero lo quería para endrogarse. Eso ocurría a las dos y media de la mañana. Llegaron al Parque de Bombas cerca del Terminal de las lanchas de Cataño. Allí encontraron a un ebrio habitual de nombre Yeyo, dormido. Epifania fue a tocar a Yeyo pero el acusado le dijo: "No lo toques porque te esgarganto a tí y esgaranto a Yeyo también." El acusado penetró entonces por una ventana dentro de la casa que sirve de estación de las lanchas. Mientras tanto Epifania se quedó al lado de Yeyo, quien seguía durmiendo porque "él me dijo que ni llamara a Yeyo ni me retirara porque me esgargantaba a mí". Como a la hora el acusado salió por la puerta de la estación de las lanchas con las ropas y las manos manchadas de sangre. Llevaba unos rollitos color *"brown"* conteniendo monedas de 10 centavos. Declara Epifania que el acusado la llevó a empujones donde estaba el hombre muerto y le dijo: "según esgarganté a ése te esgarganto a tí" y que si gritaba o lo descubría "me iba a dejar a mí como lo dejó a él, cogido por el cuello". Después el acusado le dijo a Epifania que se iba a lavar las manos en el mar y mientras eso hacía ella se fue a huir corriendo y llegó a casa de una amiga que la dejó pasar el resto de la madrugada con ella. Declaró además Epifania que no informó lo ocurrido a la policía inmediatamente por temor de que el acusado la matara. Juan Correa López, Supervisor de Tráfico de lanchas de la Autoridad de los Puertos fue al terminal de las lanchas en Cataño al informársele que habían matado al sereno Venancio Cabrera. Encontró a éste "esgargantado" tirado en el piso boca arriba cerca del torno. Notó que faltaba el dinero que había dejado en una caja de madera el día anterior y el dinero que debía tener el torno.

El doctor Juan Velázquez practicó la autopsia en el cadáver de Venancio Cabrera. Éste presentaba una herida incisa en la parte anterior del cuello que había zajado ambas

venas yugulares. La causa de la muerte fue "una hemorragia masiva principalmente externa y naturalmente por aspiración de sangre dentro de la tráquea".

La teoría de defensa fue que el acusado, la noche de los hechos estaba en su casa y que no había cometido delito alguno. Presentó como testigo al Fiscal Juan Lorenzo Rodríguez, quien declaró que un día se presentó en su oficina en Santurce Epifania acompañada de un hermano del acusado para decirle que ella quería cambiar su declaración porque lo que había declarado en Bayamón no era cierto; que Epifania estaba en estado de embriaguez y que quien llevó la voz cantante en la conversación fue el hermano del acusado; que a todo lo que éste decía ella contestaba que sí; que llamó a la fiscalía de Bayamón para referirle el caso y que no tomó declaración jurada a Epifania.

Ya Epifania, mientras ocupaba la silla testifical había declarado que un hermano del acusado llamado Juan Vélez Prieto, la había llevado amenazada con un revólver a Fiscalía para que cambiara su declaración. No aparece de los autos que dicha testigo hubiera prestado una segunda declaración escrita rectificando la primera.

También declaró como testigo de defensa Fulgencio Cruz Casillas quien había vivido anteriormente con Epifania. Por no haberse sentado las bases no se permitió al testigo relatar cierta conversación que sostuvo con Epifania después de ocurrir la muerte del sereno Venancio Cabrera.

Esa fue toda la prueba presentada en apoyo de la teoría de la defensa.

▮ Aunque en el récord hay alguna prueba que corrobora la declaración de Epifania, no nos hemos detenido a relatarla porque a nuestro juicio dicha testigo no es un cómplice. Este Tribunal ha resuelto que a los fines de la necesidad de prueba de corroboración, cómplice es aquél que con pleno conocimiento y voluntariamente—sin que medie coacción—de su libre albedrío e intencionalmente, participa en alguna forma

en la comisión de un delito, pudiendo, por tanto, procesársele por el mismo. Es esencial que el cómplice esté sujeto a ser encausado por el mismo delito que la persona acusada. *Pueblo* v. *Montalvo Acevedo*, 83 D.P.R. 727. Véanse además, *Pueblo* v. *Adorno*, 81 D.P.R. 518 y *Pueblo* v. *Rodríguez Hernández*, 91 D.P.R. 183 (1964). La testigo Epifania Padilla, si bien acompañó al acusado hasta cerca del sitio donde éste cometió el delito de asesinato mientras perpetraba un escalamiento, lo hizo en contra de su voluntad y bajo amenaza inminente de muerte. Su testimonio a ese efecto no fue contradicho y sin prueba en contrario ella no podía ser procesada por el mismo delito cometido por el acusado. Su mera presencia durante la comisión del delito, no es suficiente por sí sola, para sostener una convicción. Cf. *People* v. *Woolen*, 328 P.2d 1040; *State* v. *Pundy*, 156 A.2d 193; *Snowden* v. *State*, 165 So. 410; *Head* v. *Commonwealth*, 310 S.W.2d 285; pero aun si hubiera participado en la comisión del delito en contra de su voluntad, debido a las amenazas de muerte que le hiciera su concubino, ella no sería un cómplice. *Pueblo* v. *Rosado*, 72 D.P.R. 827.

■ Por otro lado tampoco hay evidencia de que entre Epifania y el acusado hubieran mediado actos anteriores que revelaran la existencia de una conspiración o de un designio común para llevar a cabo el acto delictivo cometido por el acusado, en cuyo caso ella hubiera sido igualmente responsable del delito cometido y por tanto, un cómplice. Cf. *Pueblo* v. *Aponte González*, 83 D.P.R. 511; *People* v. *Lewis*, 248 P.2d 461.

■ Respecto a la suficiencia de la prueba, basta decir que la de cargo señala al acusado más allá de una duda razoneble como autor del delito que le imputara el fiscal.

El tercer error impugna la admisión en evidencia de una cuchilla curva (faca) ocupada por la policía en la casa del acusado cuando fueron a citarlo para que compareciera ante el fiscal.

■ La referida cuchilla fue identificada por Epifania como el arma que el acusado portaba sobre su persona por las calles de Cataño la madrugada de los sucesos y con la cual la amenazó a ella. La evidencia en conjunto tiende a establecer el hecho de que con dicha arma el acusado dio muerte al sereno del Terminal de las lanchas en Cataño. El arma era harto conocida por Epifania pues la había visto en su casa y en poder del acusado en infinidad de ocasiones. Aun suprimiendo de la evidencia la referida cuchilla, el resto de la prueba es suficiente para establecer su portación por el acusado en la madrugada del día del crimen. Para sostener la violación de la Ley de Armas, bajo las circunstancias de este caso, no era necesario que la faca se presentara en evidencia. *Pueblo* v. *Garcés*, 78 D.P.R. 102; *Pueblo* v. *De Jesús*, 65 D.P.R. 932; *Pueblo* v. *Blanco*, 68 D.P.R. 932.

■ Respecto al cuarto y último error, consistente en que el juez sentenció por desacato al acusado en presencia de los jurados potenciales que habían de entender en su caso, por no haber comparecido a tiempo ante el Tribunal, es suficiente señalar que el acusado no nos ha demostrado que dicho incidente perjudicara sus derechos sustanciales y que el mismo amerite la revocación de la sentencia, máxime cuando no hubo objeción o protesta de parte del acusado ni solicitó remedio alguno para impedir que el incidente pudiera causarle perjuicio, si es que eso era su creencia. Cf. *Pueblo* v. *Rivera Romero*, 83 D.P.R. 471.

*Se confirmarán las sentencias apeladas.*