EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* VALENTÍN SAENZ FORTEZA, JULIÁN SAENZ FORTEZA y RAFAEL MURILLO SALLS, acusados y apelantes.

*Número:* CR-70-83 *Resuelto:* 25 de octubre de 1972

*Yamil Galib Frangie,* abogado de los apelantes; *Gilberto Gierbolini, Procurador General,* y *Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Los tres apelantes fueron convictos por un jurado unánime del delito de hurto de mayor cuantía. Arts. 426 y 428 del Código Penal, 33 L.P.R.A. secs. 1681 y 1683. En apelación señalan los siguientes seis errores:

1. El fiscal incurrió en conducta impropia que lesionó el derecho de los acusados a un juicio justo e imparcial .

2. El Tribunal de instancia erró al trasmitir sólo parcialmente una instrucción especial solicitada por la defensa con respecto a la prueba de buena reputación.

3. Erró el Tribunal de instancia al denegar la solicitud basada en la Regla 135 de Procedimiento Criminal para que se decretase la absolución de los acusados.

4. La sentencia no está sostenida por la prueba y es contraria a derecho.

5. La sentencia es el resultado de manifiesto error en la apreciación de la prueba.

6. El Tribunal de instancia erró al denegar la solicitud de nuevo juicio.

Los hechos pueden resumirse como sigue. Francisco Muñoz Ortiz, farmacéutico desde el año 1937, tiene una farmacia en la Calle Comercio del pueblo de Juana Díaz. Para la época de los hechos atendían dicha farmacia él, su esposa y un empleado para la limpieza. El empleado salía del trabajo a las seis de la tarde y la señora a las seis y media. El dueño acostumbraba salir a las 7:00 P.M. pues se quedaba a cuadrar la caja.

El 7 de noviembre de 1967 a las siete menos cuarto de la noche ya estaba el dueño solo en la farmacia. Dos de las tres puertas del establecimiento estaban cerradas; una permanecía abierta. Poco antes el dueño había llamado por teléfono a su hija para que lo fuese a recoger en automóvil. La hija fue y estacionó su vehículo frente al establecimiento, frente a una de las puertas que estaba cerrada y allí permaneció esperando a su padre.

Como a las siete de la noche el farmacéutico había terminado y se disponía a salir con una bolsa de dinero en efectivo, la cual contenía $3,500.00 en efectivo y $500.00 en cheques. En esos momentos entró a la farmacia Julián Saenz Forteza, uno de los apelantes, y pidió dos tabletas de un analgésico llamado "Sactirín." Mientras el farmacéutico atendía a Julián entró Valentín Saenz Forteza seguido de Rafael Murillo Salls, los otros dos apelantes. Estos habían dejado estacionado frente a la farmacia un carro Camaro, amarillo con capota negra, con el motor encendido. Murillo pidió "Tetrex". En ese momento los tres apelantes estaban parados frente al mostrador. Para poder despachar lo que le pedían el farmacéutico puso la bolsa del dinero encima de un escritorio que está como a treinta pulgadas detrás del mostrador. El farmacéutico se dirigió a la parte de atrás del establecimiento a buscar las cápsulas. Regresó casi enseguida con un frasco de cápsulas de "Tetrex APC" y Murillo le dijo que él no quería esas sino Tetrex sólo. Regresó el farmacéutico a la parte de atrás del negocio en busca de las cápsulas. Estuvo

atrás por unos minutos y al salir, para su sorpresa, encontró que los tres individuos habían desaparecido y que también había desaparecido la bolsa con el dinero.

El farmacéutico salió afuera y notó que tampoco estaba allí el automóvil Camaro. Inmediatamente le preguntó a su hija si le había tomado el número de la tablilla a dicho carro. Ella le dijo que no, pero que hacía poco que una amiga suya llamada Nilsa Marrero había pasado por allí y conversó con uno de los tres individuos. La hija del farmacéutico llamó por teléfono a Nilsa Marrero y obtuvo de ella los nombres y las direcciones de los individuos. El farmacéutico y su hija fueron al cuartel de la policía e informaron lo sucedido.

1. Primer error señalado: Manifestaciones del fiscal. Este planteamiento envuelve los siguientes cuatro incidentes:

(a) En el contrainterrogatorio del testigo Bernard Kantrowitz, quien declaró sobre la buena reputación de Julián, el fiscal le preguntó los nombres de las personas que le informaron sobre ese extremo y luego de que el testigo mencionó algunos nombres el fiscal le preguntó:

"Ahora, ¿usted, por ejemplo, ha recibido alguna información si alguna, digamos, del Fiscal Limeres, que es vecino de la Urbanización 'La Rambla'?

No señor.

¿Ha recibido alguna información sobre la reputación de este señor Saenz del Fiscal Martínez, que vive en La Rambla?" T.E. pág. 130.

El testigo no contestó esta última pregunta por oponerse a ello la defensa. El tribunal señaló que el fiscal podía hacer dicha pregunta en relación con vecinos del coacusado Julián Saenz. Luego el fiscal preguntó al testigo si había recibido información sobre la reputación de Julián de algún vecino inmediato de éste a lo que el testigo contestó que no, porque no sabía donde dichas personas viven.

(b) El segundo incidente se relaciona con el testigo Juan Luis Oliver, quien es amigo de Julián y de Valentín. En el

960

contrainterrogatorio declaró "yo me he dado cuenta que cuando vamos a los sitios, los aceptan en los sitios donde vamos, no los botan de los sitios, y tienen amistad dondequiera en el pueblo." Luego el fiscal le preguntó: "¿Y van con usted?" El testigo contestó: "Sí señor." Entonces el fiscal dijo: "De usted no me cabe la menor duda." La defensa objetó a este comentario del fiscal y el Tribunal sostuvo la objeción. Véase T.E. págs. 138–139.

(c) En cuanto al tercer incidente no tenemos la cita directa de las palabras del fiscal que objeta la defensa, porque fueron dichas en el curso de su informe y los informes no se transcriben. La explicación que surge de los alegatos y de la transcripción es la siguiente. Cuando declaraba Valentín Saenz éste expresó que al viajar de Ponce a San Juan él prefería la ruta por Aibonito porque, entre otras cosas, en esa ruta no hay policías. En el contrainterrogatorio el fiscal contrainterrogó sobre eso y Valentín dijo "porque muchas veces usted va a 35 millas y sube a 45 y lo cogen por ahí, y lo cogen a uno, y vive uno de su licencia." Parece que el fiscal en su informe comentó esas declaraciones del coacusado Valentín y en ese momento el abogado defensor lo interrumpió y expresó que "el fiscal no tiene autoridad en ninguna forma para decir que un acusado destila intención de cometer delito." Surge entonces el siguiente diálogo:

"La Corte: La prueba no revela eso.
Fiscal: Para cometer el delito de tránsito.
La Corte: La prueba no revela elementos suficientes para que el fiscal concluya en la forma en que lo hizo.
Fiscal: No delitos, pero sí de tránsito.
Lcdo. Galib: De delitos menos.
La Corte: Hasta ahora no. O sea, el hecho de que él se viniera por Aibonito por la Policía, eso sí." T.E. págs. 238–239.

(d) Tampoco tenemos en relación con este incidente las palabras exactas que dijo el fiscal, porque alegadamente las dijo en su informe. Sobre el particular sólo consta en el récord

una expresión de la defensa en el sentido de que el fiscal en su informe "habló de que era muy fácil conseguir testigos que vinieran a hablar de la buena reputación de una persona y muy difícil conseguir personas que vinieran a hablar de la mala reputación de un acusado."

Analicemos brevemente esos cuatro incidentes. El primero es neutral. Demostró, por un lado, que el testigo no había recibido información adversa al apelante de los fiscales Limeres y Martínez y, por otro lado, que no existía información adversa que el fiscal creyese conveniente presentar pues, según nos informa la defensa, esos dos fiscales estaban en sala cuando se hicieron esas manifestaciones.

En cuanto al segundo incidente la expresión del fiscal al testigo "De usted no me cabe la menor duda." es a todas luces impropia. No era necesaria ni útil y no es buena forma. Sin embargo, esa falta de forma quedó corregida por el Tribunal, el cual inmediatamente declaró con lugar la objeción de la defensa expresando "Con lugar la objeción en cuanto al comentario del fiscal." En cuanto al valor sicológico del incidente, fue más bien negativo para el fiscal y positivo para la defensa.

En cuanto al tercer incidente, cualquier insinuación que hubiese hecho el fiscal en su informe al comentar la declaración de Valentín de que prefería la ruta de Aibonito porque allí no hay policías, quedó suficientemente subsanada por el tribunal cuando éste dijo, "La prueba no revela eso." Véase el diálogo que surgió sobre este incidente y que hemos transcrito anteriormente. De todas maneras, esa materia fue traída por el propio Valentín y al hacerlo abrió las puertas a las inferencias que podrían deducirse de la misma. *Pueblo* v. *Rivera*, 98 D.P.R. 163, 168 (1969). También cualquier insinuación hecha por el fiscal en su informe sobre ese punto o sobre cualquier otro quedó debidamente avalorada por el tribunal, para beneficio del jurado, pues el tribunal en sus

instrucciones claramente instruyó al jurado en el sentido de que los informes del fiscal y de la defensa no constituyen prueba sino que son la forma y manera como ellos aprecian e interpretan la prueba desfilada, en ánimo de convencerlos.

El cuarto incidente se refiere, como hemos indicado antes, a un comentario del fiscal sobre la supuesta facilidad con que se consiguen declaraciones sobre la buena reputación de un acusado y la dificultad que existe para conseguir declaraciones sobre mala reputación. No creemos que este comentario añade ni quita. Los miembros del jurado son adultos y saben que por lo general las personas son reacias a declarar bajo juramento en forma adversa sobre otras personas cuando no están interesadas personalmente en los casos. Como dijimos al discutir el tercer incidente, el comentario quedó sin valor con la instrucción del tribunal sobre los informes del fiscal y de la defensa que antes mencionamos.

 Aunque es preferible, y debe ser la norma, que los fiscales y los defensores presenten su prueba y lleven a cabo sus contrainterrogatorios como mandan las reglas y sin hacer insinuaciones y comentarios que no sean los estrictamente permisibles a la luz de la prueba, no se justifica revocar por faltas de buena forma forense cuando no se han lesionado sustancialmente los derechos de las partes. Los incidentes que hemos relatado, ni tomados aisladamente ni tomados en conjunto, justifican en este caso una revocación. No podemos presumir que incidentes de esa clase le impidan a los jurados rendir un veredicto imparcial. *Pueblo* v. *Hernández Santiago*, 97 D.P.R. 522, 531 (1969); *Pueblo* v. *Rivera Romero*, 83 D.P.R. 471, 483 (1961).

2. Segundo señalamiento de error: Instrucciones al jurado. La defensa solicitó al tribunal que impartiese al jurado las siguientes instrucciones especiales en relación con la prueba de reputación:

"Prueba de la reputación de un acusado puede traerse ante el jurado, únicamente en aquellos casos en que el acusado opta por

poner en juicio su reputación, mediante prueba de que goza de buena reputación. Si así lo hace, el Ministerio Público tiene el derecho de presentar entonces prueba de la mala reputación del acusado. En este caso los acusados al presentar prueba de su buena reputación abrieron a discusión la cuestión relativa a su reputación y el Ministerio Público por ende podía haber traído de tenerla y desearlo, prueba de mala reputación."

El tribunal transmitió la primera oración de ese párrafo y omitió el resto. Luego de leer la mencionada oración el tribunal continuó dando sus instrucciones generales. Pero en dos ocasiones posteriores el tribunal preguntó si había objeciones a las instrucciones por él dadas o si las partes interesaban alguna otra instrución, expresando en la segunda ocasión "antes de que el jurado se retire?" En ambas ocasiones la defensa expresó que no tenía ninguna instrucción que solicitar. T.E. págs. 271 y 275. Fue después que el jurado se retiró que la defensa expresó que se había dado solo parte de la instrucción por ella solicitada.

██ La Regla 137 de Procedimiento Criminal, luego de disponer que las partes podrán solicitar determinadas instrucciones, preceptúa que "Ninguna de las partes podrá señalar como error cualquiera porción de las instrucciones *u omisión en las mismas* a menos que planteare su objeción a ellas o solicitare instrucciones adicionales antes de retirarse el jurado a deliberar, exponiendo claramente los motivos de su impugnación o de su solicitud." (Subrayado nuestro.) Vemos pues, que el planteamiento fue tardío. De todas maneras, para que una negativa a trasmitir instrucciones solicitadas dé lugar a revocación la instrucción debe ser correcta, el punto no debe haber sido cubierto en otras instrucciones y lo omitido debe referirse a un punto vital de manera que esa negativa prive al acusado seriamente de una defensa efectiva. *Pueblo* v. *Negrón Vélez*, 96 D.P.R. 419, 431 (1968). La parte omitida de las instrucciones especiales solicitadas en este caso no se refieren a un punto vital del mismo y la omisión en tras-

mitirla no privó a los acusados de una defensa efectiva. Ante la prueba de cargo contenida en un testimonio claro y verosímil correspondía al jurado darle crédito o no. Obviamente, por unanimidad, le dio crédito a dicha prueba de cargo.

▮ 3, 4 y 5. Los señalamientos de error tercero, cuarto y quinto se refieren a la suficiencia y evaluación de la prueba. A la luz de la prueba de cargo, hay base en el récord para sostener la convicción. Era función del jurado dirimir el conflicto en la prueba y dar, o negarse a dar, credibilidad a los testigos. No encontramos motivo en el récord para intervenir con la determinación que sobre el particular hizo unánimemente un jurado. Dichos errores no se cometieron.

▮ 6. Denegatoria de la solicitud de nuevo juicio. Se celebró una vista en el tribunal de instancia sobre dicha solicitud. Argumentaron la defensa y el fiscal. La defensa en su alegato ante nosotros somete este señalamiento por los argumentos aducidos en la vista en el tribunal de instancia y por los planteamientos precedentemente expuestos en su alegato. La moción de nuevo juicio se fundó en lo dispuesto en la Regla 188 de Procedimiento Criminal incisos (c), (d4), (d5) y (f). Esos planteamientos los hemos considerado y discutido anteriormente en esta opinión. Como se sabe, una orden denegando una moción de nuevo juicio no es apelable por no tratarse de una sentencia final en un caso criminal y solamente es revisable mediante *certiorari*. Sec. 14(a) de la Ley de la Judicatura, Ley Núm. 11 de 24 julio 1952, según enmendada, 4 L.P.R.A. sec 37(a), en relación con la Regla 193 de Procedimiento Criminal, *Pueblo* v. *Matos Rodríguez*, 91 D.P.R. 635, 641 (1965). Pero como hemos señalado, aun el examen de sus fundamentos no nos persuade de que se cometiese error al denegarla.

No habiéndose cometido los errores señalados, *se confirmarán las sentencias apeladas.*