EL PUEBLO DE PUERTO RICO, apelado, *v.* VÍCTOR DELGADO RAMÍREZ, acusado y apelante.

*Número:* CR-86-25          *Resuelto:* 27 de junio de 1991

*Carlos Ortiz Santiago*, abogado del apelante; *Víctor Delgado Ramírez, pro se*; *Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General,* y *Marjorie Rivera Rodríguez, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

El 23 de noviembre de 1983, aproximadamente a las 9:30 A.M., Víctor Delgado Ramírez agredió a su concubina Carmen Delia Guzmán Cintrón y le infligió varias heridas mortales con un arma de fuego disparada a corta distancia. De inmediato, se dirigió al Cuartel de la Policía en Villalba y se entregó a las autoridades. A la sazón, llevaba en su mano derecha el arma de fuego homicida, y sangraba por una herida en la mano izquierda. Allí *le comunicó* al retén, policía Benigno Sánchez Otero, que había matado a su "esposa", y seguidamente le entregó el arma. Se mostraba nervioso, según declarara Sánchez Otero. Instruido de sus derechos, fue puesto bajo arresto, desprovisto de su correa y registrado.

Antes de que fuese encarcelado —mientras el policía Sánchez Otero entregaba al Sargento Francisco Martínez Mateo el arma— Delgado Ramírez *señaló a este último* que dicha arma era suya y que la había utilizado para matar a su "esposa". El sargento Martínez Mateo examinó el arma —revólver S & W, calibre 38, cañón corto— y encontró que había sido disparada en su totalidad; sin embargo, dos (2) de las cinco (5) balas habían sido "mascadas", por lo que los plomos no salieron disparados.[1] Después de guardarla en una gaveta bajo llave, el sargento Martínez Mateo se personó al lugar de los hechos para realizar la investigación correspondiente. Allí encontró a la víctima moribunda, en el suelo, junto a su vehículo de motor. Ella presentaba heridas de bala en la frente y en la tráquea. El sargento Martínez Mateo se comunicó con el agente César Santiago Maldonado, del C.I.C. de Coamo, y lo dejó a cargo de la investigación.

Durante el curso de la investigación —*luego de haber sido advertido nuevamente de sus derechos*— Delgado Ramírez confesó por *tercera ocasión* al agente Santiago Maldonado que dio muerte a su "esposa" al hacerle cinco (5) disparos con un arma de fuego. Subsiguientemente, el sargento Martínez Mateo entregó el revólver, las balas y los casquillos al agente Santiago Maldonado, quien procedió a someterlos al análisis de balística que realizaría el perito Ralat Roubert.

La autopsia practicada por el Dr. Fernando Valle el 26 de noviembre de 1983 reveló la presencia de tres (3) tipos de lesiones. Dos (2) fueron resultado del impacto de unos proyectiles de arma de fuego, uno en el lado derecho del cuello y otro en el área izquierda superior de la cabeza. Este último penetró en el cráneo y le fracturó "la parte de arriba, la bóveda, y la parte de abajo, la base", provocándole la muerte. E.N.P., pág. 37. La otra lesión consistió de abrasiones en la cara dorsal del pie y en la rodilla izquierda.

---

[1] Así lo confirmó en su testimonio Víctor M. Ralat Roubert, perito de armas de fuego de la Policía.

Delgado Ramírez fue acusado en el Tribunal Superior, Sala de Ponce, por asesinato en primer grado. Posteriormente, previa solicitud suya, el tribunal acumuló todos los cargos en su contra.

Juzgado por jurado, fue encontrado culpable y sentenciado por *asesinato en segundo grado* e infracciones a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y 418.

Inconforme, en esencia, en apelación discute: (1) ausencia de prueba corroborativa sobre sus confesiones *extrajudiciales*; (2) perjuicio ocasionado a su persona por el Ministerio Fiscal haber aludido a hechos no probados en la argumentación de su teoría; (3) insuficiencia de prueba para sostener la convicción por asesinato en segundo grado, y (4) no haberse probado la cadena de evidencia en relación con los delitos de portación y posesión de armas de fuego. (2) Evaluémoslos.

## II

■ Ciertamente, cuando en un proceso criminal la *única* prueba contra un acusado consiste de sus admisiones o confesiones *extrajudiciales*, es necesario que el Ministerio Fiscal las corrobore con prueba independiente que tienda a demostrar su certeza. En ocasiones, nos hemos referido a la necesidad de probar el *corpus delicti* para poder admitir tales manifestaciones.

---

(2) Específicamente los plantea así:

"a) Erró el Tribunal al permitir al representante del Ministerio Público argumentar en su teoría sobre prueba que sabía era inadmisible y que no iba a poder presentar ante la consideración del jurado, máxime cuando con dicha prueba se pretendía probar los elementos de deliberación y malicia premeditada, violentándole al acusado el derecho a la celebración de un juicio justo e imparcial.

"b) Erró el Tribunal al no decretar la absolución del acusado cuando éste lo solicitó ya que la prueba sobre las admisiones del acusado no fue corroborada.

"c) Erró el Tribunal al no resolver como cuestión de derecho que después de desfilada la prueba del pueblo el caso debió haber continuado por el delito de homicidio ya que no desfiló prueba sobre asesinato en ninguno de los dos grados.

"d) Erró el Tribunal al impartir las instrucciones sobre asesinato, homicidio y la duda razonable, así como también, algunas de las instrucciones adicionales solicitadas por escrito.

"e) Erró el Tribunal al no decretar que la cadena de evidencia se había roto en relación a las violaciones a la ley de armas.

"f) El veredicto de asesinato en segundo grado no está sostenido por la prueba desfilada." Escrito de apelación, págs. 1–2.

*Pueblo v. Fradera Olmo*, 122 D.P.R. 67 (1988), y casos allí citados. Aun así, en otras instancias nos hemos expresado al efecto de que "la evidencia corroborativa no tiene que ser de tal grado que, independientemente de las admisiones, establezca el *corpus delicti*[; requiriéndose solamente] que El Pueblo traiga evidencia sustancial independiente que tienda a establecer la veracidad de las admisiones". *Pueblo v. Pérez Fernández*, 95 D.P.R. 919, 921–922 (1968). Esta aparente vacilación doctrinal —en cuanto al requisito de establecer el *corpus delicti*— es algo más que un simple juego de palabras, puesto que la teoría del *corpus delicti* está inmersa dentro de la teoría de la confiabilidad o veracidad de la manifestación. Así lo dejamos sentado en *Pueblo v. Pérez Fernández*, supra, y quedó diáfanamente plasmado en el resultado de *Pueblo en interés menor J.A.B.C.*, 123 D.P.R. 551 (1989).

Para que una manifestación constituya una *confesión*, es menester que se admita la comisión de unos hechos *que de por sí constituyan delito*. De la misma manera, una *admisión* surge cuando se admite la comisión de *algunos* elementos del delito, *pero no todos*. Por *definición,* la prueba que requiere la teoría del *corpus delicti* —la comisión de un delito por un agente criminal— sirve para corroborar de forma directa la *veracidad* de una confesión o admisión. Por el contrario, la prueba que requiere la teoría de la veracidad no sirve necesariamente para probar el *corpus delicti*. Bajo esta premisa fue que fundamentamos nuestros pronunciamientos en *Pueblo v. Pérez Fernández*, supra.

Como cuestión de derecho, ambas teorías no son incompatibles. Se cumple con los requisitos de la teoría de la veracidad una vez se establece el *corpus delicti*, pues esta última es *una de las varias formas* de verificar las confesiones o admisiones extrajudiciales. Así, tanto la prueba del *corpus delicti* como la prueba que establezca la veracidad de la admisión o confesión pueden utilizarse para fines corroborativos.

En el caso de autos, el Ministerio Fiscal presentó abundante prueba corroborativa de las *admisiones* del acusado Delgado Ramírez. Además, con su testimonio *en sala y ante el*

*Jurado*, aceptó la comisión de los hechos que le fueron imputados y *desapareció* la necesidad de la corroboración de sus confesiones extrajudiciales.[3] *Desde ese instante cesó toda controversia al respecto.* Como realidad innegable, el tribunal sentenciador tuvo ante sí sus manifestaciones *judiciales* —debidamente asesorado y advertido de sus derechos— en las que admitió haberle dado muerte a su concubina con un revólver.

No nos encontramos, pues, ante una situación donde la única prueba inculpatoria del Ministerio Fiscal haya sido una confesión o admisión extrajudicial. El que *también* se haya ofrecido prueba de cargo contentiva de confesiones *extrajudiciales*, no enerva ni pone en entredicho la *confiabilidad de su libre confesión judicial.* A fin de cuentas, la única controversia posible podría surgir en cuanto al tipo o grado del delito cometido.

Este trasfondo procesal y evidenciario derrota el señalamiento del apelante Delgado Ramírez sobre ausencia de prueba corroborativa y que procedía su absolución perentoria. Examinemos los restantes.

### III

Delgado Ramírez cuestiona que el tribunal haya permitido al Ministerio Público exponer en su teoría de apertura que presentaría prueba de que antes del suceso mortal tenía "la intención de provocarla"; que días antes la "amenazó con un revólver y le tiró el carro encima; que la maltrataba de palabras", y que cuando ella pasó por el Cuartel de la Policía se le fue detrás, le dio alcance en el estacionamiento y allí la mató. Alega ausencia de prueba para sostener esos hechos. Finalmente, argumenta que por su efecto perjudicial las instrucciones al Jurado no subsanaron esta conducta y, por ende, se le violó su derecho a un juicio justo e imparcial. No tiene razón.

---

(3) "Repetidamente hemos resuelto que se tiene por renunciada una moción de *nonsuit* [absolución perentoria] presentada por un acusado cuando éste, luego de ser su moción declarada sin lugar, aduce prueba en apoyo de su defensa." *Pueblo v. Díaz*, 69 D.P.R. 621, 622 (1949); *Pueblo v. Delgado Vega*, 88 D.P.R. 822 (1963).

■ En su exposición teórica, el Fiscal puede "trazar amplia-mente los hechos que él, de buena fe, espera probar, y las inferencias legítimas que surjan de esos hechos y a[u]n si él expone hechos que no sean luego objeto de prueba porque tales hechos sean en sí irrelevantes o porque él *no presentó evidencia de clase alguna* o presentó evidencia inadmisible o incompetente para sostener esos hechos, tales declaraciones del fiscal *no* constituyen error, *si él actúa de buena fe . . .*". (Énfasis suplido.) *Pueblo v. Díaz*, 74 D.P.R. 375, 381–382 (1953). *Cf. Pueblo v. Fournier*, 80 D.P.R. 390, 406 (1958). Este enfoque se justifica a base de "permitir tanto a la defensa como al fiscal, una razonable latitud en la exposición al jurado de aquello que *intenta* probar". (Énfasis suplido.) *Pueblo v. Rivera Romero*, 83 D.P.R. 471, 479 (1961).

En este caso, no hay nada en la exposición narrativa que revele mala fe del Fiscal o que éste intencionalmente se apartara de la verdad e intentara influenciar al Jurado a través de unas declaraciones falsas. *Pueblo v. Andrades González*, 83 D.P.R. 849, 854 (1961).

■ Además, se desfiló cierta prueba al efecto. Finalmente, concluimos que las instrucciones fueron específicas, adecuadas y correctas.(4)

---

(4) Disponen, *entre otras:*

"*Las manifestaciones y los informes de ambos abogados, tanto del fiscal como del abogado de la defensa no son evidencia en el caso. Apreciarán ustedes esos informes como la forma del fiscal y la defensa apreciar la prueba desfilada en el caso.*

"Cualquier evidencia que este Tribunal no ha permitido al ser ofrecida, o cualquier evidencia que este Tribunal ha ordenado sea eliminada, que se ha instru[i]do a ustedes que no tomen en consideración, deberá ser totalmente desechada por ustedes. *Vuelvo a repetirles que los informes de los abogados, tanto de la defensa como del fiscal no forman parte de la prueba. La prueba la han oído ustedes y simplemente estos informes interpretan esa prueba pero no forman parte de la prueba. Es la manera para tratar de convencerlos a ustedes, bajo el punto de vista del abogado que se dirige a ustedes.*" E.N.P., pág. 80.

IV

Delgado Ramírez nos plantea que, una vez desfilada la prueba de cargo, el caso debió *continuar* por homicidio. Tampoco tiene razón.

La prueba de cargo estableció, *prima facie*, un asesinato en segundo grado. A través del testimonio del agente investigador Santiago Maldonado, surgió el elemento necesario de *malicia premeditada*. En estas circunstancias, su reclamo era improcedente en derecho. *Pueblo v. González Pagán*, 120 D.P.R. 684 (1988); *Pueblo v. Gómez Nazario*, 121 D.P.R. 66 (1988).

Por *último*, cuestiona la cadena de evidencia en cuanto al revólver. Se fundamenta en que, luego de entregarlo al policía Sánchez Otero, éste se lo dio al sargento Martínez Mateo —quien lo guardó en la gaveta de su escritorio— y después se lo entregó al agente Santiago Maldonado. Nos argumenta que el arma admitida fue "un revólver S & W de 5 tiros, cachas de nácar, *aniquelado*, calibre 38, serie número 9*8*504 y en el cabo [tenía] el número 80374", (énfasis suplido) Alegato del acusado y apelante, pág. 32, mientras que el sargento Martínez Mateo lo describió en su declaración escrita de color *negro*, serie número 9*5*504, y en el cabo tenía el número *2*80374.

Nuestro análisis de la prueba revela que es correcto que el sargento Martínez Mateo describió el arma con un color y dos (2) dígitos distintos. Sin embargo, ello no afectó la legitimidad de esa prueba. Veamos.

Primero, en su testimonio en corte, el sargento Martínez Mateo, al ser confrontado con esa discrepancia, aclaró que se trataba de un error en la declaración. No mostró duda alguna sobre el arma. Como cuestión de realidad, todos los *demás* agentes declararon de manera *precisa* e *identificaron* satisfactoriamente el revólver.

Segundo, independientemente de lo expuesto, debemos recordar que para establecer una convicción bajo la Ley de Armas de Puerto Rico no es indispensable presentar el arma en eviden-

cia. *Pueblo v. Prieto Vélez*, 93 D.P.R. 102 (1966); *Pueblo v. Garcés*, 78 D.P.R. 102 (1955); *Pueblo v. Blanco*, 68 D.P.R. 932 (1948). *Basta que la prueba sea clara y convincente.*

Aquí, tres (3) testigos declararon que Delgado Ramírez admitió haber matado a su esposa *con un arma de fuego.* Fue visto cuando entró al cuartel portándola. Más aún, en corte abierta lo admitió. Aceptó, además, que no poseía licencia de posesión o portación. Obviamente no estamos ante un caso de prueba confusa o insuficiente. La prueba de cargo antes referida es suficiente para sostener, más allá de duda razonable, las violaciones a la Ley de Armas de Puerto Rico.

*Se dictará sentencia confirmatoria.*

La Juez Asociada Señora Naveira de Rodón y los Jueces Asociados Señores Hernández Denton y Andréu García concurren con el resultado sin opinión escrita.