# EL PUEBLO DE PUERTO RICO en interés del menor F.S.C.

*Número:* AC-89-602 *Resuelto:* 28 de junio de 1991

*Carmen Ana Rodríguez Maldonado* y *Zinia I. Acevedo Sánchez*, de la *Sociedad para Asistencia Legal*, abogadas del apelante; *Norma Cotti Cruz, Subprocuradora General*, y *Marjorie Rivera Rodríguez, Procuradora General Auxiliar*, abogadas de El Pueblo.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Apela ante nos el menor F.S.C. de la resolución del Tribunal Superior, Sala de Asuntos de Menores, emitida el 22 de agosto de 1989 que lo declaró incurso en falta al Art. 15 de la Ley Núm. 8 de 5 de agosto de 1987, Ley para la Protección de la Propiedad Vehicular, 9 L.P.R.A. sec. 3214. En su escrito de apelación aduce que no se establecieron los elementos de la falta imputada y no se probó su culpabilidad más allá de duda razonable. Por entender que los errores señalados fueron cometidos, revocamos.

I

El 6 de mayo de 1989, aproximadamente a las 10:45 P.M., dos (2) individuos, uno de ellos armado con revólver, se acercaron a la Sra. Isabel Aybar Canahuete, quien se disponía a guardar su vehículo en la marquesina de su casa. Acto seguido, le robaron su carro Honda Civic color azul marino, modelo de 1989.

Cuatro (4) días más tarde, el 10 de mayo de 1989, los agentes de la División de Control del Vicio Luis Sotomayor Medina y Milton Seda se encontraban realizando una ronda preventiva en un auto oficial no rotulado. Como a las 3:00 P.M., se percataron de que un auto Honda venía zigzagueando y por poco los impacta. Inmediatamente le ordenaron al conductor del vehículo que se detuviera. Éste no pudo producir los documentos de identidad e identificación del vehículo y respondió que el vehículo era propiedad de su madre. Los otros tres (3) pasajeros del vehículo, con la inclusión del menor aquí querellado, tampoco pudieron producir documentos de identidad.

Al momento de la intervención de los agentes de la Policía, el menor F.S.C. se encontraba en el asiento del pasajero, al lado del conductor. El menor se mantuvo callado en todo momento. E.N.P., pág. 3.

Al llamar al Cuartel de la Policía para solicitar información sobre la tablilla y el número de serie del carro, el agente Sotomayor Medina se percató de que ese vehículo había sido reportado como robado días antes y que la tablilla no correspondía con la descripción del mismo.

El vehículo tenía el bonete hundido, los interiores en malas condiciones y los asientos marcados con pintura en aerosol. A pesar de que tenía la cablería suelta y corría con el encendido directo, la llave estaba en la ignición. E.N.P., pág. 2.

Por estos hechos el conductor y el menor F.S.C. fueron denunciados como adultos e ingresados a la cárcel. Tras acreditar su condición de menor, se le sometió al procedimiento de querella en la que se alegó lo siguiente:

[El menor F.S.C.], el día 10 de mayo de 1989, alrededor de las 3:00 P.M., en la carretera 17 frente al residencial Manuel A. Pérez en

Hato Rey . . . *ilegal, voluntaria y maliciosamente, actuando en común y mutuo acuerdo* con dos menores más y un adulto, *poseía, tenía y retenía un auto* marca Honda, modelo 1989, tablilla AUI–686, color azul marino, propiedad de la Sra. Isabel Aybar Canahuete, *a sabiendas [de] que había sido obtenido ilícitamente mediante el delito de robo* . . . . (Énfasis suplido.) Informe del Procurador General, pág. 5.

En la vista adjudicativa, la Procuradora de Menores presentó como testigo a la señora Aybar Canahuete, quien declaró sobre el robo y las condiciones en que fue recuperado su automóvil. Además, declaró que a petición de la Policía se personó al cuartel, donde le mostraron tres (3) o cuatro (4) ruedas de detenidos y no logró identificar a ninguno de ellos como los sujetos que le robaron el vehículo. E.N.P, pág. 1. El Ministerio Público presentó además al agente Sotomayor Medina quien narró, según expuesto anteriormente, la intervención con el vehículo y sus pasajeros.

Tras las declaraciones de estos dos (2) testigos, el abogado defensor solicitó la absolución perentoria del menor por existir ausencia total de prueba que estableciera los elementos del delito. Esta petición fue declarada sin lugar. Tras finalizar las argumentaciones de la defensa y del Ministerio Público, el tribunal de instancia resolvió que "tomando en consideración los testimonios ofrecidos por la prueba de cargo, así como de la prueba desfilada en relación a las condiciones en que se recuperó el vehículo, se puede inferir a tenor con el inciso (6) del Artículo 16 de la Ley 8 que el menor querellado tenía conocimiento personal de la procedencia ilegal del vehículo". Resolución, pág. 7. Por ende, declaró al menor F.S.C. incurso en falta y le ordenó que permaneciera por un (1) año bajo la custodia de su madre y la supervisión del tribunal.

De esta determinación recurre ante nos el menor F.S.C., representado por la Sociedad para Asistencia Legal, y alega la comisión de los errores siguientes:

(1) Que la prueba de cargo era insuficiente en derecho para establecer su participación mediante concierto y común acuerdo.

938

(2) Que erró el tribunal de instancia al utilizar la inferencia permisible establecida por el Art. 16(6) de la Ley Núm. 8 de 5 de agosto de 1987 (9 L.P.R.A. sec. 3215(6)) para considerar probados los elementos de la falta, por constituir esto una violación al debido proceso de ley.

(3) Que no se estableció su culpabilidad más allá de duda razonable.

(4) Que erró el tribunal de instancia al no absolverlo perentoriamente.

II

El citado Art. 15 de la Ley Núm. 8 (conocida como la Ley para la Protección de la Propiedad Vehicular) dispone:

Toda persona que *posea*, compre, reciba, almacene, oculte, *transporte*, *retenga* o disponga mediante venta, trueque o de otro modo algún *vehículo* [*de*] *motor* o pieza de algún vehículo de motor, *a sabiendas de que fue obtenida mediante apropiación ilegal, robo, extorsión o cualquier otra forma ilícita*, será sancionada con una pena de reclusión por un término fijo de seis (6) años. . . . (Énfasis suplido.) 9 L.P.R.A. sec. 3214.

Para imponer responsabilidad criminal a una persona como autor de un delito es indispensable que ésta haya tomado parte directa en la comisión del delito; instigado, ayudado o cooperado a cometerlo; haberse valido de una persona inimputable para cometerlo o haber ayudado a los que lo cometieron, en cumplimiento de una promesa anterior. Art. 35 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3172. De aquí se desprende que no es necesario ser el agente que comete el delito, sino que basta participar, aunque sea pasivamente, en la empresa delictiva. Sin embargo, para poder ser sancionada, esta participación debe ser realizada con intención o negligencia criminal y ser probada más allá de duda razonable. Art. 14 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3061; *Pueblo v. Carrasquillo Carrasquillo*, 102 D.P.R. 545, 552 (1974). En estos casos de coautoría la responsabilidad criminal debe ser establecida por

actos anteriores y posteriores que, considerados en conjunto, revelen la existencia de una conspiración o de un "designio común". *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139, 145–147 (1985); *Pueblo v. Prieto Vélez*, 93 D.P.R. 102, 107 (1966); *Pueblo v. Aponte González*, 83 D.P.R. 511, 519–520 (1961).

▮ A tenor con el requisito de intención criminal, este Foro ha resuelto que la mera presencia durante la comisión de un delito "no es suficiente *por sí sola* para sostener una convicción". (Énfasis en el original.) *Pueblo v. Ortiz Martínez*, supra, pág. 145; *Pueblo v. Prieto Vélez*, supra, pág. 107; *Pueblo v. Zengotita*, 89 D.P.R. 870, 875 (1964). Véase, a modo ilustrativo, *United States v. Minieri*, 303 F.2d 550, 557 (2do Cir. 1962), *cert.* denegado, 372 U.S. 847. De igual manera, el mero hecho de que una persona se encuentre en un vehículo donde se transporta material de drogas no puede llevar a la conclusión de que esa persona actuaba en común acuerdo con el conductor del mismo. *Pueblo v. Maysonet Laureano*, 90 D.P.R. 497, 501 (1964). A tenor con esto, la presencia en el lugar de los hechos debe considerarse junto a las demás circunstancias que rodean los hechos delictivos para poder imponer responsabilidad criminal.

▮ En el caso de la Ley Núm. 8, *supra*, 9 L.P.R.A. sec. 3201 *et seq.*, se castiga la mera posesión de un vehículo de motor a sabiendas de que fue obtenido ilícitamente. Al igual que en la derogada Ley de Narcóticos de Puerto Rico, lo que se prohíbe es lo que el Código Civil llama "posesión natural". No importa, pues, la duración de la misma. Véanse: *Pueblo v. Cruz Rosado*, 97 D.P.R. 513 (1969); *Pueblo v. Pellot Pérez*, 92 D.P.R. 812, 815 y 817 (1965). Como la posesión es un elemento del delito, es indispensable probar que el imputado tenía la posesión actual y directa sobre el objeto. Esta posesión implica dominio, control y tenencia física sobre el objeto ilegal.[1]

---

[1] "Posesión natural" significa la aprehensión o *tenencia* de una cosa corporal. "Poseer" significa tener uno *en su poder* una cosa. *Diccionario de la Lengua Española*, 20ma ed., Madrid, Ed. Espasa-Calpe, 1984, T. II, pág. 1090.

 Sin embargo, se podría configurar el delito si se prueba la posesión constructiva del vehículo obtenido ilícitamente. Este tipo de posesión se da cuando, a pesar de que una persona no tiene la posesión inmediata o tenencia física del objeto, tiene el poder e intención de ejercer el control o dominio sobre el mismo. Véanse: *Pueblo v. Cruz Rivera*, 100 D.P.R. 345, 349 (1971); *Pueblo v. Cruz Rosado*, supra, págs. 515–516. Véanse, a modo ilustrativo: *State v. McCaughey*, 541 P.2d 998, 1000 (1975); *Commonwealth v. Davis*, 280 A.2d 119, 121 (1971). En estos casos "se impondrá responsabilidad penal a todas las personas que tengan conocimiento, control y manejo del bien prohibido, aun cuando no lo tengan bajo su posesión inmediata". D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, Hato Rey, Ed. Inst. Desarrollo del Derecho, 1983, pág. 127. También se da la posesión constructiva conjunta cuando "varias personas, con conocimiento, comparten el control sobre el artículo delictivo". *Pueblo v. Rivera Rivera*, 117 D.P.R. 283, 294 (1986).(2)

 A tenor con esto, ni estar cerca de mercancía robada ni la mera presencia en un vehículo robado implica la posesión constructiva del objeto. Véanse, a modo ilustrativo: *United States v. Batimana*, 623 F.2d 1366, 1369 (9no Cir. 1980), *cert.* denegado, 449 U.S. 1038; *United States v. Ashley*, 587 F.2d 841, 844 (6to Cir. 1978); *United States v. Vilhotti*, 452 F.2d 1186, 1188–1189 (2do Cir. 1971), *cert.* denegado, 406 U.S. 947; *State v. Kimbrough*, 262 A.2d 232 (1970); *Baker v. United States*, 395 F.2d 368 (8vo Cir. 1968); *State v. Serrano*, 251 A.2d 97 (1969); *Barnes v. United States*, 341 F.2d 189, 191–192 (5to Cir. 1965); Anotación, *Constructive Possession of Stolen Property*, 30 A.L.R.4th 488, 510–513 (1984). De igual forma, el hecho de que una persona se encuentre en el asiento del pasajero, al lado del chofer, y que unas huellas digitales se encuentran en la puerta no demuestran control,

---

(2) "La posesión constructiva, que es simplemente una doctrina usada para expandir la aplicación de los delitos tipo posesión o situaciones en que no se puede probar directamente el control físico en sí, es a menudo descrita en términos de dominio y control." (Traducción nuestra.) W.R. LaFave y Scott, *Substantive Criminal Law*, Minnesota, Ed. West Publishing Co., 1986, T. I, pág. 281.

dominio, tenencia física o constructiva del vehículo. Véase *Allison v. United States*, 348 F.2d 152, 154 (10mo Cir. 1965). Por ende, una persona que se encuentre de pasajero en un vehículo, por haber aceptado o solicitado transportación, no tiene la posesión del mismo y no comete delito alguno. *Pueblo v. Maysonet Laureano*, supra, pág. 501. Es necesario probar, pues, la posesión directa o constructiva con evidencia directa o circunstancial suficiente, esto es, más allá de duda razonable. Al evaluar si existe posesión constructiva, deben tomarse en consideración los eventos anteriores, coetáneos y posteriores a la alegada posesión ilegal. Así, por ejemplo, debe tomarse en consideración, entre otros, si el acusado alegó ser dueño del objeto en cuestión, si participó en el robo del mismo, si intentó disponer del objeto y el tiempo transcurrido entre el robo y la alegada posesión.

## III

En el caso de autos, la querella imputaba al menor F.S.C. la posesión, tenencia y retención de un automóvil robado de manera ilegal, voluntaria y maliciosa, "actuando en común y mutuo acuerdo" con dos (2) menores más y un adulto.

■ Para poder obtener una convicción válida en derecho y derrotar la presunción de inocencia que asiste a toda persona acusada de delito, era indispensable que la Procuradora de Menores presentara prueba respecto a cada uno de los elementos del delito. Sin embargo, esta obligación iba más allá de la mera presentación de prueba respecto a cada elemento del delito. *Pueblo v. Cabán Torres*, 117 D.P.R. 645, 652 (1986). Dicha prueba tiene que ser suficiente para establecer los elementos y su relación con el acusado más allá de duda razonable. Art. II, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1; *Pueblo v. Ramos y Álvarez*, 122 D.P.R. 287 (1988); *Pueblo v. Bigio Pastrana*, 116 D.P.R. 748, 760–761 (1985); *Pueblo v. Picó Vidal*, 99 D.P.R. 708, 713 (1971). Esto es, tiene que ser prueba que "produzca certeza o convicción moral en una conciencia exenta de preocupación". *Pueblo v. Carrasquillo*

*Carrasquillo*, supra, pág. 552. Véanse: *Pueblo v. Narváez Narváez*, 122 D.P.R. 80 (1988); *Pueblo v. Cabán Torres*, supra. De aquí que la insatisfacción de la conciencia del juzgador con la prueba es lo que provoca una duda razonable. *Pueblo v. Toro Rosas*, 89 D.P.R. 169, 175 (1963). Es esa la duda que amerita revocar una convicción.

Por ser la apreciación de la prueba desfilada en un juicio una cuestión mixta de hecho y de derecho, la determinación de culpabilidad de un acusado más allá de duda razonable es revisable como cuestión de derecho. *Pueblo v. Rivero, Lugo y Almodóvar*, 121 D.P.R. 454 (1988); *Pueblo v. Cabán Torres*, supra, pág. 653. A pesar de que, de ordinario, no intervendremos con la apreciación de la prueba hecha por los tribunales de instancia, cuando un análisis de la misma nos produce una duda razonable y fundada sobre si la culpabilidad del acusado fue probada más allá de duda razonable, procede revocar el fallo o veredicto. *Pueblo v. Rivero, Lugo y Almodóvar*, supra; *Pueblo v. Álamo Álamo*, 116 D.P.R. 673 (1985); *Pueblo v. Marcano Pérez*, 116 D.P.R. 917 (1986); *Pueblo v. Sanabria Pérez*, 113 D.P.R. 694 (1983); *Pueblo v. Pagán Díaz*, 111 D.P.R. 608 (1981).

Somos conscientes del grave problema de robo de vehículos al cual se enfrenta el país. Precisamente, la Ley para la Protección de la Propiedad Vehicular fue creada "[e]n protección de aquellos ciudadanos con un comportamiento social de obediencia a la ley y como una medida para prevenir el crimen y detener al criminal . . .". 1987 Leyes de Puerto Rico 654, 655. Su propósito es facilitar al agente del orden público la investigación de las complejas operaciones de apropiación ilegal, en especial la realizada por el crimen organizado, para que eventualmente se pueda lograr la convicción por cualquier violación de la ley. Exposición de Motivos de la Ley Núm. 8 de 5 de agosto de 1987. Para lograr el propósito de la ley, es indispensable que el Ministerio Público traiga ante la consideración del juzgador toda la prueba pertinente para que se sostenga la acusación y demuestre la culpabilidad del acusado más allá de duda razonable.

 Sin embargo, nos corresponde a los tribunales la tarea de dirimir la prueba presentada tanto por el Ministerio Público como por la defensa y determinar si un acusado es culpable más allá de duda razonable al descargar esta responsabilidad. "No cumpliríamos con nuestro deber si estando plenamente convencidos de que la prueba en determinado caso no establece la culpabilidad del acusado más allá de duda razonable, permitiéramos que prevaleciera una sentencia condenatoria". *Pueblo v. Serrano Nieves*, 93 D.P.R. 56, 60 (1966).

En el caso de autos, la prueba de la Procuradora de Menores demostró que dos (2) individuos robaron el automóvil de la señora Aybar Canahuete cuando ésta se disponía a guardarlo en su marquesina. También demostró que varios días más tarde el agente Sotomayor Medina detuvo a cuatro (4) jóvenes cuyo automóvil estaba zigzagueando y por poco impacta al carro oficial no rotulado. Este vehículo resultó ser el que le fuera robado a la señora Aybar Canahuete. Quedó demostrado, además, que el menor F.S.C. iba *como pasajero* en dicho vehículo y que *en ningún momento comentó nada,* y que al igual que los demás jóvenes *permaneció tranquilo.* También quedó probado que la señora Aybar Canahuete no identificó a ninguno de los cuatro (4) jóvenes detenidos como los participantes del robo de que fue objeto. Esta fue toda la prueba del Ministerio Fiscal, a base de la cual se halló culpable al menor F.S.C. de posesión de un auto robado en concierto y común acuerdo con los otros tres (3) jóvenes.

 Un examen objetivo de la prueba de la Procuradora de Menores revela que lo único que quedó probado fue que el menor F.S.C. se encontraba presente, como pasajero, dentro del automóvil robado y que permaneció tranquilo cuando el auto fue detenido por la Policía. La obligación del Ministerio Público era probar más allá de duda razonable los elementos de posesión y conocimiento. Sin embargo, en ningún momento ofreció prueba para demostrar que el pasajero tenía la posesión directa o constructiva del vehículo. El tribunal de instancia no podía

concluir que el menor tenía la posesión del vehículo a base de su mera presencia en éste. A pesar de que el menor no contradijo las aseveraciones del chofer de que el carro era de su madre, y a pesar de que ambos se conocían, esto no sostiene la determinación de posesión. Véase, a modo ilustrativo, *State v. Plank*, 731 P.2d 1170 (1987). Resulta claro del texto del estatuto que éste castiga la posesión, no la presencia en un vehículo hurtado. Tampoco la Procuradora de Menores ofreció ninguna prueba que sugiriera la existencia de concierto y común acuerdo entre el menor F.S.C. y los demás pasajeros o el chofer.

En fin, como la prueba presentada por la Procuradora de Menores no demostró más allá de duda razonable que el menor F.S.C. poseyera el vehículo en concierto y común acuerdo con los demás pasajeros o el chofer, el menor no venía en la obligación de presentar prueba alguna en su defensa. El peso de la prueba recae en la parte acusadora, por lo que una convicción debe fundamentarse en la solidez de esta prueba y no en la debilidad de la prueba de la defensa.(3)

Por los fundamentos anteriormente expuestos, *se revoca la sentencia y se declara la absolución del menor F.S.C.*

El Juez Asociado Señor Negrón García emitió opinión disidente. El Juez Asociado Señor Alonso Alonso disintió sin opinión escrita.

---

(3) Respecto al segundo elemento del delito, esto es, el conocimiento de que el vehículo fue obtenido ilícitamente, el Art. 16 de la Ley para la Protección de la Propiedad Vehicular establece una inferencia permisible de que el imputado tenía conocimiento personal de la adquisición ilícita del vehículo cuando, entre otras cosas, la tablilla no corresponda al vehículo o cuando el carro se encuentra bajo el control y posesión de una persona que "no puede probar su derecho a conducirlo o a tener posesión del mismo o misma, cuando haya sido informado como . . . robado . . . . 9 L.P.R.A. sec. 3215(8). Como no se probó un elemento esencial del delito, es innecesario que nos pronunciemos sobre este segundo aspecto. Basta, para declarar la absolución del menor, que no se haya probado el elemento de posesión.

—O—

Opinión disidente del Juez Asociado Señor Negrón García.

I

Es un principio universal que el hecho humano siempre precede al Derecho. De ahí, para el jurisprudente, la importancia de evaluar *cuidadosamente todas las circunstancias fácticas*; lo contrario significa desdibujar el trasfondo empírico que determina la aplicación correcta de la norma jurídica y, con ello, arriesgarnos a perpetuar una injusticia.

Así ocurre con la decisión mayoritaria suscrita por el Juez Asociado Señor Hernández Denton. Jurídica y evidenciariamente es INCORRECTA E INJUSTA. Frustra además los esfuerzos legítimos del Estado por proteger a la ciudadanía contra el grave mal que aqueja a nuestra sociedad en torno a apropiación, uso y disposición ilegal de los vehículos de motor. Finalmente, propicia que vehículos ilegalmente apropiados sean "utiliza[dos] por los delincuentes para llevar a cabo fechorías tales comos robos, asaltos, escalamientos y asesinatos como un medio para impedir su identificación por la policía". Exposición de Motivos de la Ley Núm. 8 de 5 de agosto de 1987, Leyes de Puerto Rico, pág. 655, denominada Ley para la Protección de la Propiedad Vehicular, 9 L.P.R.A. sec. 3201 *et seq.* Nos explicamos.

II

Un análisis sereno e inteligente de la Exposición Narrativa de la Prueba refleja, según lo determinó el tribunal de instancia (Hon. Juan A. Arill Miranda, Juez), la culpabilidad del apelante F.S.C. más allá de duda razonable.

De entrada, no se cuestiona la validez de la intervención del agente Luis Sotomayor Medina de la División de Control del Vicio de San Juan. Ocurrió aproximadamente a las 3:00 P.M. del 10 de mayo de 1989 en la Carr. Núm. 17, Avenida Piñeiro en Hato Rey, frente al Residencial Manuel A. Pérez, cuando el agente notó un

vehículo color azul, marca Honda, modelo Civic 1989, que venía zigzagueando y que por poco impacta el vehículo oficial no rotulado que conducía. Sotomayor Medina realizaba un patrullaje preventivo junto al agente Milton Seda. E.N.P., pág. 3.

Al detenerse el conductor del vehículo Honda, los agentes le requirieron que mostrara la documentación (licencia de conducir y del vehículo). Éste les informó que no las tenía y que el vehículo pertenecía a su mamá. Íd. El agente Sotomayor Medina pidió a tres (3) jóvenes que también iban en dicho automóvil —y que estaban callados— que le mostrasen sus documentos de identificación. Ninguno los proveyó. Íd.

Ante esa situación, Sotomayor Medina se comunicó con el Cuartel General para investigar la tablilla del automóvil. Fue informado que pertenecía a otro vehículo. Al dar el número de serie impreso en el panel de instrumentos, fue notificado de que aparecía como hurtado poco días antes. E.N.P., págs. 3-4. Todos sus ocupantes fueron arrestados.

Por estos hechos se presentó contra el menor F.S.C. —de diecisiete (17) años— una querella por infracción al Art. 15 de la Ley para la Protección de la Propiedad Vehicular, 9 L.P.R.A. sec. 3214.(1) En la Vista Adjudicativa declararon la Sra. Isabel Aybar Canahuete, dueña del vehículo robado, y el agente Sotomayor Medina. Oportunamente, la defensa solicitó la absolución perentoria. Denegada la misma, la defensa decidió no presentar prueba y el caso quedó sometido.

El tribunal declaró a F.S.C. incurso en la falta imputada. Como medida dispositiva le impuso un (1) año bajo la custodia de su madre y la supervisión del tribunal. E.N.P., pág. 5. Inconforme, apeló.

---

(1) Dispone:

"Toda persona que *posea*, compre, reciba, almacene, oculte, *transporte, retenga o disponga* mediante venta, trueque o *de otro modo algún vehículo [de] motor* o pieza de un vehículo de motor, *a sabiendas de que fue obtenida mediante apropiación ilegal, robo, extorsión o cualquier otra forma ilítica, será sancionada* . . . ." (Énfasis suplido.) 9 L.P.R.A. sec. 3214.

## III

La opinión mayoritaria dedica varias páginas a relacionar nuestra casuística —y alguna federal y estatal— sobre propiedad hurtada o ilegal, para al final exponer que la conducta delictiva de posesión tipificada en el Art. 15 de la Ley para la Protección de la Propiedad Vehicular, *supra*, es susceptible de configurarse *real o constructivamente*. Opinión mayoritaria, págs. 933–937. Después, procede a sustituir la apreciación valorativa directa del juez sentenciador y a absolver a F.S.C., fundada en que no se probaron los elementos claves del delito, esto es, la "posesión y conocimiento". Esa conclusión supuestamente está apoyada en que un "examen objetivo de la prueba de la Procuradora de Menores revela que lo único que quedó probado fue que el menor F.S.C. se encontraba presente, como pasajero, dentro del automóvil robado y que permaneció tranquilo cuando el auto fue detenido por la Policía". Opinión mayoritaria, pág. 938.

Esa determinación es incorrecta, trunca y ajena al proceso real de psicogénesis decisorio que, la experiencia nos dice, impera en nuestros tribunales de instancia. Es más bien producto de un análisis incompleto. Expongamos las conclusiones razonables que avalan la sentencia, siguiendo el enfoque judicial de inferencias lógicas fundamentadas en *mayor probabilidad, nexo racional* y, claro está, *sentido común*.

## IV

No hay la más mínima evidencia que sostenga que la "presencia" del menor F.S.C. en el vehículo hurtado fuera el resultado de una decisión adoptada contra su propia voluntad. Es imperativo, pues, aceptar que él libremente decidió acompañar al conductor, que lo conocía, y de igual modo, que optó por sentarse a su lado al frente.

Una vez establecidos esos hechos, a menos que F.S.C. fuera ciego o de escasa inteligencia —tampoco hay prueba al efecto— es obvio que antes, durante y después de montarse y ocupar el

vehículo, tuvo que percatarse de numerosos detalles físicos visibles que indubitadamente apuntaban hacia una sola conclusión: *su procedencia ilegal.* Veamos.

Se trataba de un vehículo cuyo modelo era nuevo, esto es, del año entonces en curso (1989). Aun así, su *exterior* reflejaba que el bonete estaba *forzado* y *hundido.* Más aún, la *cerradura de la puerta del chofer* aparecía *forzada.* E.N.P., pág. 2.

En su *interior,* los asientos delanteros estaban sin cabezales (*head rest*) y escritos con *magic marker.* Los interiores estaban pintados con *spray.* Sobre todo, *la cablería del encendido había sido sacada para ponerlo a funcionar directamente.* Aun. cuando tenía puesta la llave de la ignición, el vehículo *era conducido* con el encendido directo. E.N.P., pág. 2.

Todas estas circunstancias tienen un significado probatorio que ni el foro sentenciador como tampoco nosotros podemos ignorar. Confirman que F.S.C. tenía que ser consciente del origen ilegal del automóvil. Establecen, además, que tuvo una posesión constructiva —al utilizarlo en viaje de placer (o con otros propósitos)— y, claro está, la existencia de un concierto y común acuerdo. La norma jurídica correcta ha sido así resumida: "[C]oncluimos que de la presencia de un pasajero en un vehículo hurtado puede surgir una inferencia de posesión, cuando esa presencia va unida a evidencia adicional de que el pasajero conocía al conductor, sabía que el vehículo era hurtado, y tuvo la intención de usarlo para su propio beneficio o placer". (Traducción nuestra.) *State v. McCoy,* 561 A.2d 582, 588 (N.J. 1989).

La mayoría le atribuye una importancia adjudicativa desmedida a la conducta de F.S.C. al permanecer callado y "tranquilo" cuando la Policía intervino. Opinión mayoritaria, pág. 938. Aunque expresamente no lo dicen, la premisa inarticulada es que ese comportamiento refleja que desconocía el origen ilegal del vehículo. Rechazamos semejante enfoque. "[D]ebemos evitar caer en la superficialidad de atribuirle a toda mente y conducta humana *presunciones de un proceder automático.* Hay delincuentes que realizan el acto delictivo a plena luz del día, sin ocultarse, y otros de manera contraria. Ante determinado reclamo policial pueden

responder de distintas maneras: unos huyen; *otros permanecen serenos con la mayor naturalidad*; otros se desprenden, a como dé lugar, del material delictivo; otros espontáneamente admiten sin reservas sus actuaciones; etc. La dinámica de la conducta delictiva, aunque diferente en sus protagonistas, medios y en un sinnúmero de circunstancias, presenta en el fondo características básicas comunes. Lo importante es detectar cuándo esas discrepancias, producto de las diferencias humanas, están presentes en determinada actuación." (Énfasis suplido y en el original.) *Pueblo v. Espinet Pagán,* 112 D.P.R. 531, 536–537 (1982).