ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>RECURRIDO<br><br><br>V.<br><br><br>GERARDO LUIS FERRER DÍAZ<br><br>PETICIONARIO | KLCE202500125 Cons. KLCE202500126 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Criminal Número: ISCR202400749; ISCR202400753; I1CR202400238<br><br>Sobre:<br>Art. 6.09 Ley 168 (2); Art. 6.22 Ley 168; Art. 412 Ley 4; Art. 404 A Ley 4; Art. 246 del CP |
| EL PUEBLO DE PUERTO RICO<br><br>RECURRIDO<br><br><br>V.<br><br><br>JOFREE MATOS SEDA<br><br><br>PETICIONARIO | | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Criminal Número: ISCR202400744-748; I1CR202400237<br><br>Sobre:<br>Art. 6.09 (2) y Art. 6.22 Ley de Armas y otros; Art. 404 A y Art, 412 CP |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo

Ortiz Flores, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 31 de marzo de 2025.

Comparecen el señor Gerardo Luis Ferrer Díaz (Sr. Ferrer Díaz) y el señor Jofree Matos Seda (Sr. Matos Seda), mediante sus respectivas peticiones de *Certiorari*, en las cuales nos solicitan que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI) el 27 de noviembre de 2024. En la resolución recurrida antes citada, el TPI declaró No Ha Lugar las mociones de desestimación presentada por ambos peticionarios.

Adelantamos que, por los fundamentos que exponemos a continuación, denegamos expedir los autos de *certiorari* solicitados en los recursos consolidados.

Número Identificador
RES2025_____

**I**

Los recursos ante nuestra consideración tienen su génesis en unos alegados hechos ocurridos el 23 de julio de 2022, por los cuales, el Ministerio Público les presentó al Sr. Ferrer Díaz y al Sr. Matos Seda cargos sobre varios delitos. En primer lugar, el Ministerio Público le presentó al Sr. Ferrer Díaz los siguientes cargos: dos infracciones al Artículo 6.09 de la Ley Núm.168 de 2019, *Ley de Armas de Puerto Rico de 2020* (Ley de Armas), 25 LPRA sec. 466h; una infracción al Artículo 6.22 de la Ley de Armas, *supra*. sec. 466u; una infracción al Artículo 412 de la Ley Núm. 4 de 23 de junio de 1971, según enmendada, *Ley de Sustancias Controladas de Puerto Rico* (Ley de Sustancias Controladas), 24 LPRA sec. 2412; una infracción al Artículo 404 de la Ley de Sustancias Controladas, *supra*. sec. 2404; y, una infracción al Artículo 246 del Código Penal de Puerto Rico, 33 LPRA sec. 5336.[1] En específico, los cargos que pesan contra el Sr. Ferrer Díaz, los cuales se encuentran en controversia versan como sigue:

> **Ley 168, Art. 6.09 Grave (2019)- Portación, Posesión o Uso Ilegal de Armas Largas Semiautomáticas**
>
> Cometido en Lajas, PR el día 23 de julio de 2022 a eso de las 11:18 pm de la siguiente manera:
>
> El referido acusado de delito, GERARDO LUIS FERRER DÍAZ, allá en o para el día 23 de julio de 2022 en Lajas, PR que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala Superior de Mayagüez, ilegal, voluntaria, temerariamente, a propósito, con conocimiento, maliciosa y criminalmente y en mutuo y común acuerdo con JOFREE MATOS SEDA y JAVIER ALEXIS MONTALVO SEDA, violó lo dispuesto en el Artículo 6.09 de la Ley Núm. 168 del 11 de diciembre de 2019, según enmendada, conocida como la "Ley de Armas de Puerto Rico de 2020", ya que portó y transportó sin autorización de la Ley de Armas de Puerto Rico una pistola modificada para disparar automáticamente (Pistola Glock, modelo 23, calibre .40, serie BEDE730, cargada con 14 municiones) sin tener una licencia de armas vigente.
>
> **Ley 168, Art. 6.09 Grave (2019)- Portación, Posesión o Uso Ilegal de Armas Largas Semiautomáticas**
>
> Cometido en Lajas, PR el día 23 de julio de 2022 a eso de las 11:18 pm de la siguiente manera:

---

[1] Apéndice del recurso de *Certiorari*, KLCE202500125, págs. 31-41.

El referido acusado de delito, GERARDO LUIS FERRER DÍAZ, allá en o para el 23 de julio de 2022 en Lajas, PR que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala Superior Mayagüez, ilegal, voluntaria, temerariamente, a propósito, con conocimiento, maliciosa y criminalmente y en mutuo y común acuerdo con JOFREE MATOS SEDA y JAVIER ALEXIS MONTALVO SEDA, violó los dispuesto en el Artículo 6.09 de la Ley Núm. 168 del 11 de diciembre de 2019, según enmendada, conocida como la "Ley de Armas de Puerto Rico de 2020", ya que portó y transportó, sin autorización de la Ley de Armas de Puerto Rico una pistola modificada para disparar automáticamente (Pistola Glock modelo 30, calibre .45, cargada con 10 municiones) sin tener una licencia de armas vigente.

En segundo lugar, el Ministerio Público le presentó cargos al Sr. Matos Seda por dos infracciones al Artículo 6.09 de la Ley Núm.168 de 2019, Ley de Armas, *supra*; una infracción al Artículo 6.22 de la Ley de Armas, *supra*; dos infracciones al Artículo 412 de Ley de Sustancias Controladas, *supra*; una infracción al Artículo 404 de la Ley de Sustancias Controladas, *supra*; y, una infracción al Artículo 246 del Código Penal de Puerto Rico, 33 LPRA sec. 5335.[2] En específico, los cargos que pesan contra el Sr. Matos Seda los cuales se encuentran en controversia, versan de la siguiente manera:

**Ley 168, Art. 6.09 Grave (2019)- Portación, Posesión o Uso Ilegal de Armas Largas Semiautomáticas**

Cometido en Lajas, PR el día 23 de julio de 2022 a eso de las 11:18 pm de la siguiente manera:

El referido acusado de delito, JOFREE MATOS SEDA, allá para el día 23 de julio de 2022 en Lajas, PR que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala Superior de Mayagüez, ilegal, voluntaria, temerariamente, a propósito, con conocimiento, maliciosa y criminalmente y en mutuo y común acuerdo con JAVIER ALEXIS MONTALVO SEDA Y GERARDO LUIS FERRER DÍAZ, violó lo dispuesto en el Artículo 6.09 de la Ley Núm. 168 del 11 de diciembre de 2019, según enmendada, conocida como la "Ley de Armas de Puerto Rico de 2020", ya que portó y transportó sin autorización de la Ley de Armas de Puerto Rico una pistola modificada para disparar automáticamente (Pistola Glock, modelo 23, calibre .40, serie BEDE730, cargada con 14 municiones) sin tener una licencia de armas vigente.

**Ley 168, Art. 6.09 Grave (2019)- Portación, Posesión o Uso Ilegal de Armas Largas Semiautomáticas**

Cometido en Lajas, PR el día 23 de julio de 2022 a eso de las 11:18 pm de la siguiente manera:

---

[2] Apéndice del recurso de *Certiorari*, KLCE202500126, págs. 23-32.

El referido acusado de delito, JOFREE MATOS SEDA, allá para el día 23 de julio de 2022 en Lajas, PR que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala Superior de Mayagüez, ilegal, voluntaria, temerariamente, a propósito, con conocimiento, maliciosa y criminalmente y en mutuo y común acuerdo con JAVIER ALEXIS MONTALVO SEDA Y GERARDO LUIS FERRER DÍAZ, violó lo dispuesto en el Artículo 6.09 de la Ley Núm. 168 del 11 de diciembre de 2019, según enmendada, conocida como la "Ley de Armas de Puerto Rico de 2020", ya que portó y transportó sin autorización de la Ley de Armas de Puerto Rico una pistola modificada para disparar automáticamente (Pistola Glock modelo 30, calibre .45, cargada con 10 municiones) sin tener una licencia de armas vigente.

Luego de varios incidentes judiciales, el Tribunal de Primera Instancia celebró una Vista Preliminar el 6 de junio de 2024, en la cual se encontró causa probable para acusar al Sr. Ferrer Díaz y el Sr. Matos Seda sobre varios delitos, en específico, dos infracciones al delito tipificado en el Artículo 6.09 de la Ley Núm.168 de 2019, Ley de Armas, *supra*.[3]

En cuanto al Sr. Ferrer Díaz, este presentó una *Moción de desestimación al amparo de la regla 64(p) de procedimiento criminal* el 3 de julio de 2024.[4] En el referido escrito, solicitó la desestimación de los cargos al amparo de la Regla 64 (p) de Procedimiento Criminal, 34 LPRA Ap. III, R.64, pues alegó que el Ministerio Público no presentó prueba suficiente que pudiera establecer la totalidad de los elementos del delito del Artículo 6.09 de la Ley de Armas*, supra*, específicamente sobre la posesión constructiva del imputado con las armas. Arguyó que de la prueba presentada en la Vista Preliminar surgió que sobre su persona no se ocupó ninguna arma, no tenía control ni dominio sobre alguna arma y mucho menos podía observarla, lo cual es un elemento fundamental en una posesión constructiva.  Del mismo modo, adujo que no se ocupó la alegada arma en las pertenencias que pudieran ser vinculadas al imputado o que no hubiera duda de que le pertenecían, por lo que el Ministerio Público no cumplió con presentar la prueba requerida en la etapa de vista preliminar.

---

[3] Apéndice del recurso de *Certiorari*, KLCE202500125, págs. 17-26; KLCE202500126, págs. 17-19.
[4] Apéndice del recurso de *Certiorari*, KLCE202500125, págs. 17-26.

Por su lado, el 15 de julio de 2024 Matos Seda presentó una *Moción de desestimación al amparo de la regla 64 (p) de las de procedimiento criminal.*[5] En ese escrito, el Sr. Matos Seda solicitó al foro primario la desestimación de sus cargos al amparo de la Regla 64 (p) de Procedimiento Criminal, *supra*, con el argumento de que no se presentó prueba sobre que este tenía conocimiento y control del arma de fuego. Del mismo modo, arguyó que era pasajero frontal y ni siquiera poseía control del vehículo, ya que este no le pertenecía.

El 15 y 17 de julio de 2024, el Ministerio Público presentó sus respectivos escritos titulados *Moción en oposición a solicitud de desestimación al amparo de la regla 64(p) de las de procedimiento criminal.*[6] En los referidos escritos, el Ministerio Público expuso que no procede la desestimación solicitada pues de los escritos de los imputados solo se hace alusión a que no se presentó prueba suficiente sobre que los imputados conocían o portaban las armas. Arguyó que lo declarado por el Sargento Rodríguez en la vista preliminar fue que observó cuando el Sr. Ferrer Díaz estiró su mano para coger un arma que se encontraba en un bolsillo del asiento del pasajero frontal, una situación que duró varias horas, mientras que los otros coacusados se encontraban dentro del mismo vehículo moviéndose y haciendo todo tipo de expresión. Alegaron que, conforme al testimonio que tuvo ante su consideración el foro primario en la Vista Preliminar, se justifica la determinación de causa probable.

Finalmente, el 27 de noviembre de 2024, el Tribunal de Primera Instancia emitió una *Resolución* la cual declaró No Ha Lugar los escritos sobre desestimación presentados por ambos peticionarios.[7] El TPI expuso un resumen del testimonio recibido en la Vista Preliminar por el Sargento

---

[5] Apéndice del recurso de *Certiorari*, KLCE202500126, págs. 17-19.
[6] Apéndice del recurso de *Certiorari*, KLCE202500125, págs. 42-44; KLCE202500126, págs. 33-35.
[7] *Id.* págs. 1-16;1-16.

Rodríguez,[8] el cual nos permite **en esencia** exponer el siguiente relato de

hechos:

> El Sargento Rodríguez declaró que el 23 de julio de 2022 tomó servicio a eso de las 4:00 pm, en el cual fue asignado a un servicio especial de patrullaje preventivo para investigar varias querellas anónimas relacionadas a disparos al aire en áreas de alta incidencia criminal en el pueblo de Lajas. Que se encontraba acompañado del Agente Martínez y visitaron varios sectores que surgían de las querellas anónimas. Atestiguó que alrededor de las 11:15-11:18 de la noche, en Palmarejo, entraron a un garaje abandonado donde había un restaurante llamado "Herencia Taína" en el cual se ubicaron mirando en dirección hacia Cabo Rojo. Que al pasar unos minutos escucharon música a todo volumen que provenía de un vehículo Toyota Yaris Azul, con su baúl abierto, que transitaba por la Carretera 101 y que tomo acceso a la parte de atrás del restaurante anteriormente mencionado. Arguyó que decidieron intervenir con ellos pues en Lajas existía una Ordenanza Municipal #41 que prohíbe lo que es conocido como "voceteo". Que encendieron los biombos y el vehículo Toyota Yaris hizo un viraje en "u" y se movió como si fuera a salir hacia la carretera 101. Atestiguó que luego que el vehículo Toyota Yaris se detuviera, el Agente Martínez salió de la patrulla y fue por el lado izquierdo del vehículo interviniendo por el lado del conductor. Del mismo modo, testificó que se bajó de la patrulla para dar apoyo por el lado del conductor y observó que se trataban de tres individuos. Mientras el Agente Martínez se encontraba interviniendo con el conductor, el testigo observó que el pasajero de la parte posterior empuñaba un arma de fuego negra que extraía del bolsillo del asiento del pasajero frontal, por lo que expresó "arma de fuego, arma de fuego". Que luego de darle comandos de que pusiera las manos donde las pudiera ver, el pasajero posterior soltó el arma, dentro del mismo bolsillo.

> El testigo identificó en sala a Gerardo Luis Ferrer Díaz como el pasajero posterior del vehículo intervenido. También identificó a Jofree Matos Seda como el pasajero frontal. Atestiguó que Ferrer Díaz subió el cristal del vehículo, lo cual intentó evitar el testigo con sus manos, pero no tuvo éxito por lo que se alejó del vehículo, mientras que los ocupantes del vehículo gritaban que no le dispararan. El Agente Martínez fue para la patrulla a llamar para refuerzo, mientras que los ocupantes del vehículo que estaba siendo intervenido le realizaban expresiones y el testigo rodeaba todo el vehículo con arma en mano. Antes de que llegara el refuerzo, Ferrer Díaz sacó su celular y comenzó a grabar a los agentes diciendo "los estoy grabando" y "no disparen abusadores".

> Al llegar el refuerzo, testificó que podía observar a Ferrer Díaz que levantaba y bajaba las manos y las acercaba al área donde había visto que se había soltado un arma. Luego de que los pasajeros y el conductor se bajaran del vehículo, el testigo fue a la parte trasera del vehículo, y detrás del asiento del pasajero frontal en el bolsillo encontró y ocupó una Glock 40 cargada con "magazines" extendido,

---

[8] *Id.* págs. 3-8, 3-8.

pero no recordaba con cuantas balas. Del mismo modo, al moverse luego de obtener el arma, observó en el área de los pies donde se encontraba Ferrer Díaz, una "mariconera" y la tomó. Que luego de obtener esta "mariconera" se percató que en el piso del carro donde se encontraba Matos Seda había una segunda "mariconera" abierta y adentro se podía ver otra arma de fuego negra con el agarre de goma roja. Testificó que esta segunda arma era una Glock 45 Modelo 30 cargada con 10 balas. Que al hacerle un registro de seguridad a Ferrer Díaz le ocuparon un "magazine" extendido con municiones.

Luego de que se llevaran al cuartel a los tres detenidos y se completaran los documentos y advertencias legales, le preguntaron a Ferrer Díaz cuál era su intención al tomar el arma de fuego en las manos y este le manifestó que era botarla que no era para dispararle a ellos. Que Ferrer Díaz le expresó que había otros "magazines" adicionales en la "mariconera" que estaba en sus pies. Que al investigar la aludida "mariconera" encontró "magazines", frascos negros y uno azul que contenían marihuana.[9]

El Tribunal de Primera Instancia razonó, luego de evaluar la evidencia testimonial vertida en la vista preliminar, que el Ministerio Público cumplió con la *scintilla* de evidencia requerida en la etapa de vista preliminar para poder declarar causa probable para acusar. Resolvió, respecto al argumento de los imputados sobre la posesión constructiva, que de la evidencia presentada se lograba establecer que los imputados poseían un grado de conocimiento y control sobre el material delictivo. Esto es así, pues del testimonio vertido en juicio por el Sargento Rodríguez, que intervino en la detención, se estableció que pudo observar el material delictivo que se encontraba en plena vista. Del mismo modo, arguyó que las acciones, expresiones y conducta del Sr. Ferrer Díaz y el Sr. Matos Seda, al momento de la intervención, demostraron que el material delictivo estaba al alcance de ambos imputados y eran objeto de su control y conocimiento de ambos dentro del vehículo.

El 4 y 11 de diciembre de 2024, ambos peticionarios presentaron una *Moción de Reconsideración*.[10] El 9 y 13 de enero de 2025, el TPI declaró ambas mociones No Ha Lugar.[11]

---

[9] Véase, Apéndice del recurso de *Certiorari*, KLCE202500125, págs. 1-16; KLCE202500126, págs. 1-16.

[10] *Id.* KLCE202500125, págs.27-28; KLCE202500126, págs. 20-21.

[11] *Id.* KLCE202500125, págs.29-30; KLCE202500126, pág. 22.

Inconformes, el 7 de febrero de 2025, los peticionarios presentaron los dos recursos de *Certiorari* ante nuestra consideración, en los cuales nos señalan la comisión del siguiente error:

> Erró el TPI al declarar No Ha Lugar la Moción de Desestimación al amparo de la Regla 64(p) y la Moción de Reconsideración.

El 14 de febrero de 2025, los peticionarios presentaron una *Moción informativa y en solicitud de consolidación*. En el aludido escrito, solicitaron la consolidación de los recursos KLCE202500125 y KLCE202500126. Así las cosas, el 28 de febrero de 2025 este Tribunal emitió una *Resolución* mediante la cual se consolidaron los recursos KLCE202500125 y KLCE202500126.

El 10 de marzo de 2025 la Oficina del Procurador General de Puerto Rico presentó su escrito en oposición.

Contando con la comparecencia de todas las partes, procedemos a resolver.

## II

## A.

El auto de *certiorari* es un vehículo procesal extraordinario que le brinda autoridad a un tribunal de mayor jerarquía para revisar las determinaciones de un tribunal inferior. *Rivera et al v. Arcos Dorados et al*, 212 DPR194 (2023) que cita a: *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *IG Builders et al v. BBVAPR*, 185 DPR 307, 337-338 (2012). Para determinar si procede la expedición de un auto de *certiorari*, debemos considerar lo siguiente:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema;
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el TPI;
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio;

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B R.40; *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

Es decir, estamos obligados a evaluar "tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio." *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

Por tanto, debemos abstenernos de intervenir con las determinaciones de los tribunales de instancia cuando estén enmarcadas en el ejercicio de la discreción, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitará un perjuicio sustancial. *Lluch v. España Service Sta.*, 117 DPR 729, 745-746 (1986). Asimismo, con relación a determinaciones interlocutorias discrecionales procesales, no debemos sustituir nuestro criterio por el ejercicio de discreción del tribunal de instancia, salvo cuando dicho foro haya incurrido en arbitrariedad o craso abuso de discreción. *Melendez v. Caribbean Int'l News*, 151 DPR 649, 664 (2000).

**B.**

Cuando se determina causa probable para arresto por un delito grave bajo la Regla 6, las Reglas de Procedimiento Criminal requieren la celebración de una vista preliminar bajo la Regla 23 de Procedimiento Criminal, 34 LPRA AP.II., R. 23 (Regla 23), a los fines de determinar, en esencia, si procede la presentación de un pliego acusatorio por el delito

grave imputado y la oportuna celebración del juicio. La Regla 23 dispone sobre la celebración de vista preliminar lo siguiente:

(a) Cuándo se celebrará. Se celebrará una vista preliminar en aquel caso en que se imputare a una persona un delito grave (felony). En estos casos deberá citársele para esa vista por lo menos cinco (5) días antes de su celebración. En los casos en que se hiciere constar, de acuerdo con la Regla 22(c), que la persona no puede obtener asistencia legal, el magistrado correspondiente le nombrará abogado y el nombre de éste se incluirá en la citación para la vista preliminar. El magistrado comunicará dicha vista al abogado.

(b) Renuncia. Luego de haber sido citada, la persona podrá renunciar a la vista preliminar mediante escrito al efecto firmado por ella y sometido al magistrado antes de comenzar la vista o personalmente en cualquier momento durante la vista. Si la persona renunciare a la vista o no compareciere a ella luego de haber sido citada debidamente, el magistrado la detendrá para que responda por la comisión de un delito ante la sala correspondiente del Tribunal de Primera Instancia.

(c) Procedimiento durante la vista. Si la persona compareciere a la vista preliminar y no renunciare a ella, el magistrado deberá oír la prueba. La persona podrá contrainterrogar los testigos en su contra y ofrecer prueba a su favor. El fiscal podrá estar presente en la vista y podrá también interrogar y contrainterrogar a todos los testigos y ofrecer otra prueba. Al ser requerido para ello el fiscal pondrá a disposición de la persona las declaraciones juradas que tuviere en su poder de los testigos que haya puesto a declarar en la vista. Si a juicio del magistrado la prueba demostrare que existe causa probable para creer que se ha cometido un delito y que la persona lo cometió, el magistrado detendrá inmediatamente a la persona para que responda por la comisión de un delito ante la sección y sala correspondiente del Tribunal de Primera Instancia; de lo contrario exonerará a la persona y ordenará que sea puesta en libertad. El magistrado podrá mantener en libertad a la persona bajo la misma fianza o determinación de fianza diferida, libertad bajo propio reconocimiento o libertad bajo custodia de tercero o bajo las mismas condiciones que hubiere impuesto un magistrado al ser arrestada, o podrá alterar las mismas o imponer una fianza o tomar una determinación de fianza diferida, libertad bajo propio reconocimiento, libertad bajo custodia de tercero o condiciones de acuerdo con la Regla 218(c) si éstas no se le hubiesen impuesto, y si a juicio del magistrado ello fuere necesario. No obstante, lo anterior el magistrado no podrá alterar la fianza fijada o la determinación de fianza diferida, libertad bajo propio reconocimiento o libertad bajo custodia de tercero o condiciones impuestas por un magistrado de categoría superior, a menos que en la vista preliminar se determine causa probable por un delito inferior al que originalmente se le imputó a la persona. Después de que terminare el procedimiento ante él, el magistrado remitirá inmediatamente a la secretaría de la sección y sala correspondiente del Tribunal de Primera Instancia todo el expediente relacionado con dicho procedimiento, incluyendo

cualquier fianza prestada. En el expediente se hará constar la fecha y el sitio de la vista preliminar, las personas que a ella comparecieron y la determinación del magistrado.

La vista preliminar será pública a menos que el magistrado determine, previa solicitud del imputado, que una vista pública acarrea una probabilidad sustancial de menoscabo a su derecho constitucional a un juicio justo e imparcial, y que no hay disponibles otras alternativas menos abarcadoras y razonables que una vista privada para disipar tal probabilidad. En tales casos la decisión del magistrado deberá fundamentarse en forma precisa y detallada.

También se podrá limitar el acceso a la vista preliminar cuando el magistrado determine, previa solicitud a tales efectos, que tal limitación es necesaria para proteger cualquier otro interés de naturaleza apremiante y que no existen otras alternativas menos abarcadoras y razonables. La decisión del magistrado deberá fundamentarse en forma precisa y detallada.

Se dispone que el magistrado deberá limitar el acceso a la vista preliminar, previa solicitud del fiscal, en aquellos casos en que éste interese presentar el testimonio de un agente encubierto o un confidente que aún se encuentre en esas funciones o cuando esté declarando la víctima de un caso de violación o actos impúdicos o lascivos.

El Tribunal Supremo de Puerto Rico ha señalado sobre la vista preliminar lo siguiente:

(1) el objeto central de la vista preliminar no es hacer una adjudicación en los méritos en cuanto a la culpabilidad o inocencia del acusado;

(2) aunque se trata de una función propiamente judicial, no es ""un mini juicio";

(3) el fiscal no tiene que presentar toda la prueba que posea;

(4) la vista está encaminada a proteger a la persona imputada a través de un filtro o cedazo judicial por el cual el Estado tiene que pasar prueba, y demostrar si está justificado o no a intervenir con la libertad de un ciudadano y someterlo a los rigores y contingencias de un juicio plenario; y

(5) una vez se demuestra y se justifica esta intervención, la vista ha cumplido su propósito de ley. *Pueblo v. Rodríguez Aponte*, 116 DPR 653, 665 (1985).

El propósito principal de la vista preliminar "es evitar que una persona sea sometida injustificadamente a los rigores de un proceso penal" y esto "se logra mediante la exigencia de que el Estado presente alguna prueba sobre los elementos constitutivos del delito y sobre la conexión del imputado con su comisión." *Pueblo v. Rivera Vázquez*, 177

DPR 868, 875 (2010). Asimismo, la Regla 23, provee para que se permita, a la persona imputada de delito, "presentar prueba a su favor y contrainterrogar a los testigos de cargo." *Id.* Luego, corresponde al foro de instancia adjudicar si existe causa probable para acusar. *Id.*

Se trata de una vista "que permite evaluar, tanto la validez del arresto, como las probabilidades de que la persona sea culpable del delito grave que se le imputa" sin hacer una adjudicación en los méritos, es decir, no es un "mini juicio". *Pueblo v. Rivera Vázquez*, *supra*, págs. 875-876.

Distinto al juicio en su fondo, el *quatum* de prueba que nuestro ordenamiento jurídico requiere para determinar causa probable para acusar es de una *scintilla* de evidencia que de paso a una determinación prima facie de los elementos del delito y su conexión con el imputado. *Pueblo v. Nieves Cabán*, 201 DPR 853, 864 (2019). Así, la determinación emitida por el TPI que determina la existencia de causa probable luego de celebrar una vista preliminar, "concede la debida autorización al Ministerio Público para presentar la acusación de rigor." *Pueblo v. Rivera Vázquez*, supra, pág. 876. 684 (1988).

## C.

La Regla 64 de Procedimiento Criminal, 34 LPRA AP.II., R. 64, establece los fundamentos por los cuales un acusado puede desestimar la acusación o denuncia, o cualquier cargo. En lo pertinente a este caso, en su inciso (p) dispone lo siguiente:

> (p) Que se ha presentado contra el acusado una acusación o denuncia, o algún cargo de las mismas, sin que se hubiere determinado causa probable por un magistrado u ordenado su detención para responder del delito, con arreglo a la ley y a derecho.

El Tribunal Supremo ha expresado que existen dos escenarios particulares mediante el cual procede la desestimación la acusación o denuncia, o cualquier cargo conforme la Regla 64 en su inciso (p), estos son:

> [1] en aquellas circunstancias en las que se determine causa probable para acusar, a pesar de la ausencia total de

prueba sobre alguno de los elementos del delito imputado o de su conexión con el acusado. […] [2] cuando se haya infringido alguno de los requisitos o derechos procesales que se deben observar durante la vista preliminar. *Pueblo v. Negrón Nazario,* 191 DPR 720, 735 (2014).

La determinación de causa probable para acusar emitida por un Tribunal goza de una presunción de corrección, por lo cual el acusado debe persuadir al foro que atienda una moción de desestimación que la determinación de causa probable no fue conforme a uno de los escenarios en derecho establecidos en la Regla 64(p) de Procedimiento Criminal, *supra. Pueblo v. Negrón Nazario, supra*. Es decir, que hubo ausencia total de prueba sobre alguno de los elementos del delito imputado o de su conexión con el acusado o cuando se infringió en alguno de los requisitos o derechos procesales que se deben observar durante la vista preliminar.

### D.

La *Ley de Armas de Puerto Rico*, *supra*, tipifica la portación, posesión o uso ilegal de armas largas semiautomáticas, automáticas o escopeta de cañón cortado en su Artículo 6.09. Sobre el mismo establece dispone lo siguiente:

> Toda persona que porte, posea o use sin autorización de esta Ley un arma larga semiautomática, una ametralladora, carabina, rifle, así como cualquier modificación de estas o cualquiera otra arma que pueda ser disparada automáticamente o escopeta de cañón cortado a menos de dieciocho (18) pulgadas, y que pueda causar grave daño corporal, o cualquier pieza o artefacto que convierte en arma automática cualquier arma de fuego, incurrirá en delito grave, y convicta que fuere será sancionada con pena de reclusión por un término fijo de veinticuatro (24) años, sin derecho a sentencia suspendida, o a disfrutar de los beneficios de algún programa de desvío, bonificaciones o a cualquier alternativa a la reclusión reconocida en esta jurisdicción, debiendo cumplir en años naturales la totalidad de la pena impuesta. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de treinta y seis (36) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de dieciocho (18) años.
>
> No constituirá delito la posesión o uso de estas armas en el cumplimiento del deber por los agentes del Negociado de la Policía o por otros agentes del orden público debidamente autorizados. Tampoco constituirá delito la posesión o uso de estas armas según permitido en otros Artículos de esta Ley.

Uno de los elementos esenciales para probar la comisión de este delito es la **posesión**. El Tribunal Supremo ha expresado que la posesión puede ser una **inmediata o constructiva**. Véase, *Pueblo v. Cruz Rivera*, 100 DPR 345, 349 (1971). Un acusado mantiene posesión constructiva cuando "a pesar de que […] no tiene la posesión inmediata o tenencia física del objeto, tiene el poder e intención de ejercer el control o dominio sobre el mismo". Véase, *Pueblo en Interés Menor F.S.C.*, 128 DPR 931, 940 (1991). Del mismo modo, se ha reconocido la posesión constructiva cuando varias personas, con conocimiento, comparten el control de un objeto delictivo. *Pueblo v. Rivera Rivera*, 117 DPR 283, 294 (1986). En estos casos se le impondrá responsabilidad penal a todas las personas que posean conocimiento, control y manejo del objeto delictivo, incluso cuando este objeto no esté bajo posesión inmediata de estos. *Pueblo en Interés Menor F.S.C.*, *supra*, que cita a D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, Hato Rey, Ed. Inst. Desarrollo del Derecho, 1983, pág. 127.

### III

En el recurso ante nuestra consideración, los peticionarios nos señalan que el Tribunal de Primera Instancia incidió al declarar No Ha Lugar la Moción de Desestimación al amparo de la Regla 64(p) y la Moción de Reconsideración, pues alegan que hubo completa falta de evidencia por parte del Ministerio Público que pudiera establecer la posesión constructiva de ambos respecto a las armas encontradas. No les asiste la razón.

Somos del criterio que la posesión constructiva ocurre cuando una persona tiene el poder e intención de ejercer el control o dominio sobre un objeto delictivo, incluso cuando no tiene la posesión inmediata o tenencia física del mismo.[12] Esto pudiese ocurrir cuando varias personas, con conocimiento, comparten el control del objeto delictivo.[13] Por lo tanto, en los casos donde se alega posesión constructiva se le impondrá

---

[12] Véase, *Pueblo en Interés Menor F.S.C.*, *supra*.
[13] Véase, *Pueblo v. Rivera Rivera, supra*.

responsabilidad penal a todas las personas que posean conocimiento, control y manejo del objeto delictivo, incluso cuando este objeto no esté bajo posesión inmediata de estos.[14]

Luego de evaluar detenidamente los recursos presentados, ahora consolidados y los alegatos de las partes, somos del criterio que el foro primario actuó de forma razonable y no abusó de su discreción al declarar **No Ha Lugar** las mociones de desestimación presentadas por el Sr. Ferrer Díaz y el Sr. Matos Seda al amparo de la Regla 64 (p) de Procedimiento Criminal, *supra.*

Los foros apelativos no debemos intervenir con las decisiones de los tribunales de instancia, "salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que [la] intervención en esa etapa evitará un perjuicio sustancial." *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).

**IV**

Por los fundamentos que anteceden, denegamos expedir el auto de *certiorari* solicitado en ambos recursos consolidados.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[14] Véase, *Pueblo en Interés Menor F.S.C.*, *supra.*